**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** ) | **CASE NO: 5:24 cr 00311** |
| ) | |
| **Plaintiff** ) | **JUDGE RUIZ** |
| ) | |
| -vs- ) | |
| **CHRISTOPHER J. MACHAMER** ) | **MOTION DISMISS** |
| ) | **INDICTMENT** |
| **Defendant** ) | |
| ) | |

Now comes Defendant, **Christopher Machamer,** by and through undersigned counsel, and hereby this Court, pursuant to Federal Rule of Criminal Procedure 12(b)(3)(B), to dismiss the indictment because the statutes in which he is charged are unconstitutional. Each of the statutes infringes upon the right of a law-abiding, adult citizen to keep and bear arms, as guaranteed by the Second Amendment.

## BACKGROUND.

The indictment charges Mr. Machamer with five federal offenses, each arising under Title 26 of the United States Code, which provides in relevant part:

It shall be unlawful for any person—

**(a)** to engage in business as a manufacturer or importer of, or dealer in, firearms without having paid the special (occupational) tax required by section 5801 for his business or having registered as required by section 5802; or

**(d)** to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record; . . .

**(e)** to transfer a firearm in violation of the provisions of this chapter; or

**(f)** to make a firearm in violation of the provisions of this chapter; or

**(h)** to receive or possess a firearm having the serial number or other identification required by this chapter obliterated, removed, changed, or altered(.) 26 U.S.C. § 5861(d) & (h).

1

**LAW AND ARGUMENT.**

The statues under which Mr. Machamer is indicted violate the Constitution because they burden the conduct protected in the Second Amendment and because they are not consistent with the history and tradition of firearm regulation in the United States, as required by *New York State Rifle & Pistol Ass'n v. Bruen*, 142 S.Ct. 2111 (2022). Now, under *Bruen*, the validity of firearm restrictions turns entirely on text and history:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen,* 142 S. Ct. at 2126. This model requires courts to take only one step. The inquiry is simple: does "the plain text of the Second Amendment cover an individual's conduct?" If so, "the Constitution presumptively protects that conduct." *Id*. According to the Supreme Court, if the individual is among "'the people' whom the Second Amendment protects," and wishes "to keep and bear arms" in the home or in public "in case of confrontation," then the answer is yes, the plain text of the "unqualified command" protects that activity. *Bruen,* 142 S. Ct. at 2134–35.

The Second Amendment, along with the First, Second, Fourth, Ninth, and Tenth Amendments, refers to "the people." Within the Constitution, "the people" is a "term of art"—wherever it occurs, "the term unambiguously refers to all members of the political community, not an unspecified subset." *District of Columbia v. Heller*, 554 U.S. 570, 580-81 (2008). (emphasis added); accord *United States v. Verdugo–Urquidez*, 494 U.S. 259, 265 (1990) (The term "refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community."). The Second Amendment right—no less than the others mentioned above— "belongs to all Americans." *Heller,*

554 U.S. at 581.

Recently, a federal district recently ruled that the definition of "firearm" and "frame or receiver" in the Gun Control Act did not encompass gun kits, and the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF) exceeded its authority under the act in regulating the kits. *Garland v. VanDerStok*, 625 F. Supp. 3d 570. The Fifth Circuit affirmed the district court's determination that the two provisions exceeded ATF's statutory authority. The United States Supreme Court accepted the case for review and oral arguments were held on October 8, 2024.[1]

This Court should similarly recognize that 26 U.S.C. § 5861(a), (d-f), and (h) each relating to so called "ghost guns"— a pejorative term for privately manufactured firearms that are and have been legal in the United States for our 246-year history—are unconstitutional because they prohibit conduct that is protected by the Second Amendment and the government cannot show that any of these statutes are "consistent with the Nation's historical tradition of firearm regulation."

Each count of the indictment at issue invokes a statute that burdens conduct protected by the plain text of the Second Amendment. Thus, each are presumptively unconstitutional, and the Government cannot rebut that presumption.

**A. The offenses charged in Counts One and Three restrict a citizen's right to make firearms.**

Counts One and Three of the indictment relate to the manufacture of firearms in violation of 26 U.S.C. §§ 5861(a) and (f).

For purposes of 26 U.S.C. Ch. 53, "[t]he term 'make' and the various derivatives of such word, shall include manufacturing (other than by one qualified in such business under this chapter), putting together, altering, any combination of these, or otherwise producing a firearm." 26 U.S.C.

---

[1] https://www.americanbar.org/groups/public_education/publications/preview_home/garland-v-vanderstock/

3

§ 5845(i). Essentially, Mr. Machamer is charged with two federal felonies for violating this chapter by making short-barreled rifles.

The Second Amendment, which protects "the right of the people to keep and bear Arms," also protects, by necessary implication, the right to *acquire* arms. See *Luis v. United States*, 578 U.S. 5, 26–27 (2016) (Thomas, J., concurring); see also *Rigby v. Jennings*, 630 F. Supp. 3d 602, 615 (D. Del. 2022). One way of acquiring arms is by making them; indeed, self-manufacture of firearms is an historically common way to acquire them. Joseph G.S. Greenlee, *The American Tradition of Self-Made Arms*, 54 ST. MARY'S L.J. 35, 45–70 (2023). And although *Bruen* allows certain restrictions on Second Amendment protected activity are acceptable if they can be shown to be consistent with this Nation's historical tradition of firearm regulation, there is no historical tradition of regulating the private making of firearms. Instead, Congress has focused (as in the Gun Control Act) on regulating the *commercial* sale of firearms. In fact, all such restrictions on the manufacture of arms for personal use have been enacted within the last decade. Greenlee, *supra*, at 78.

26 U.S.C. §§ 5861(a) and (f) breaks with this history and raises serious Second Amendment concerns. The Government must therefore prove that these statutes also align with historical tradition delimiting the outer bounder of the right to keep and bear arms in the United States.

**B. The offense charged in Count Two restricts a citizen's right to transfer firearms.**

Count Two of the indictment charges Mr. Machamer with Unlawful Transfer of Unregistered Firearms in violation of § 5861(e). There can be no doubt that this count of the indictment invokes a statute that prohibits conduct protected by the Second Amendment's "operative clause." The Second Amendment protects citizens' right "to possess and carry weapons in case of confrontation." See *Bruen,* 142 S. Ct. at 2134 (*quoting District of Columbia v. Heller*, 554 U.S.

4

570, 592 (2008)). Because the vast majority of people who keep firearms first "received" them from someone else, whether a firearms dealer, a private seller, or a friend, family member, or acquaintance who gave or sent a gun to the recipient, "receiving" a firearm is protected conduct. See *United States v. Quiroz*, No. PE:22-CR-00104-DC, 2022 WL 4352482, at *3 (W.D. Tex. Sept. 19, 2022).

Mr. Machamer urges this Court to apply the same reasoning to the transfer of firearms.

### C. The offenses charged in Counts Four and Five restrict a citizen's right to use or possess a rifle based solely on the length of its barrel and presence of a serial number.

Because §§ 5861(d) and (h) each prohibit conduct protected by the plain text of the Second Amendment, each is presumptively unconstitutional. Essentially, Mr. Machamer is charged with violating these statutes by possessing firearms with a barrel shorter than sixteen (16) inches and/or lacking a serial number and failing to register the firearm.

Courts have sometimes held that the possession of short-barrel rifles is not protected by the Second Amendment. For example, the Tenth Circuit held in 2018 that short-barreled rifles were outside of the protection of the Second Amendment because of their similarity to short-barrel shotguns. *United States v. Cox*, 906 F.3d 1170, 1184–86 (10th Cir. 2018). The *Cox* panel explained that the Supreme Court previously held that short-barrel shotguns are not protected by the Second Amendment, and the defendant failed to present a meaningful distinction between short-barrel shotguns and short-barrel rifles, so short-barrel rifles were therefore outside of the Second Amendment's protection. *Id*. (citing *United States v. Miller,* 307 U.S. 174, 178–79 (1937)).

But the *Cox* rationale fails in light of *Bruen,* which does not accept such a barebones analysis, nor does it place the burden on the defendant to establish a distinction. Additionally, *Cox* later explains, "[a]ccording to *Heller*, 'the Second Amendment extends, prima facie, to all instruments that constitute bearable arms.'" *Id.* at 1186. There can be no doubt that a short-barrel

5

rifle is a "bearable arm." Thus, under both *Heller* and the Tenth Circuit's own analysis, the Second Amendment's protection extends, on its face, to the possession of short-barrel rifles. See *Bruen*, 142 S. Ct. at 2129–30 (stating that when "the Second Amendment's plain text covers an individual's conduct," the conduct is "presumptively protect[ed]" by the Second Amendment).

*Heller*'s own language, combined with the modern *Bruen* analysis, supports a finding that the possession of short-barrel rifles satisfies the first step of the *Bruen* test. The *Heller* Court spent much time discussing, and ultimately cabining-in, the holding in *Miller*, 554 U.S. at 621-69. "*Miller* stands only for the proposition that the Second Amendment right, whatever its nature, extends only to certain types of weapons." *Id.* at 623. The next question was what types of weapons the Second Amendment permits under the *Miller* rationale. *Id.* at 624–25. The Court ultimately held: "We . . . read *Miller* to say only that the Second Amendment does not protect those weapons not typically possessed by law-abiding citizens for lawful purposes, such as short-barreled shotguns." *Id.* at 625. The *Heller* Court further explained that *Miller e*xtended Second Amendment protections to "the sorts of weapons protected were those 'in common use at the time.'" *Id.* at 627 (quoting *Miller,* 307 U.S. at 179).

Mr. Machamer notes that short-barrel rifles are gaining popularity within the United States. An ATF statistical report indicates that, as of May 2021, 532,725 short-barrel rifles had been registered under the National Firearms Act. Bureau of Alcohol, Tobacco, Firearms, and Explosives, *Firearms Commerce in the United States, 2021 Annual Statistical Update*, P. 16 (2021). Certainly, given that more than half a million short-barrel rifles were registered as of 2021 (and many more are not), it cannot be said that they are "weapons not typically possessed by law-abiding citizens for lawful purposes." *Heller,* 554 U.S. at 625.

While it is true that short-barrel rifles are less popular than handguns, standard-length rifles,

6

and standard-length shotguns, that does not mean they are not in common use. Additionally, the law itself serves as an impediment to short-barrel rifles—particularly those based on the AR-15 platform—gaining popularity. Semi-automatic assault rifles, including the AR-15 and those rifles based on its design, were made illegal in the Public Safety and Recreational Firearms Use Protection Act of 1994. Pub. L. No. 103-322 § 110102 (1994). Following that law's expiration in 2004, AR-15-style rifles could be owned by civilians once more. The limited time frame in which semi-automatic assault rifles have been legal undoubtedly influences the degree to which short-barrel rifles are in common use.

Moreover, firearms enthusiasts are known to dislike government oversight of their firearms ownership, particularly when that oversight is in the form of a registry. The fact that registration is a necessary component of legal possession—the constitutionality of that component is challenged in this Motion—necessarily influences the popularity of any weapon subject to that requirement. The law cannot be used to create a circular basis for restricting possession of a weapon and thereby establishing an absence of Second Amendment protection for that weapon.

Mr. Machamer does not contend that all weapons must categorically receive the Second Amendment's protection. Rather, taking into account *Heller*'s analysis, and *Bruen*'s two-step approach to Second Amendment issues, Mr. Machamer asserts that the question of whether possession of a given weapon is, or is not, protected by the Second Amendment must be resolved at the second step of the *Bruen* test rather than the first. Thus, the Government must meet its burden to demonstrate a history and tradition concerning the type of restriction employed and the type of weapon subjected to the restriction.

7

## CONCLUSION.

Mr. Machamer is an adult and a citizen of the United States. He is not legally prohibited from possessing firearms. Given these facts, it is the Government's burden to show that this statute aligns with historical tradition delimiting the outer bounds of the right to keep and bear arms in the United States.

        Respectfully Submitted,

        /S/ Donald J. Malarcik
        Donald J. Malarcik, 0061902
        Attorney for Christopher Machamer
        121 South Main Street, Suite 520
        Akron, OH 44308
        T: (330) 253-0785
        F: (330) 253-7432
        don@ohiodefensefirm.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of January, 2025, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's system.

        /S/ Donald J. Malarcik
        Donald J. Malarcik, 0061902
        Attorney for Christopher Machamer